Council, please approach the bench. Identify yourselves for the record, please. Good morning. My name is John Reno, but I represent the Plano Potomac Medical Center. Reno? Reno. W-I-E-N-O-R-O. Good morning, Your Honors. My name is David Sullivan. I represent three of the Appley's, Oakside Corporation, Lakeshore Medical Fitness, and Lakeshore Management. Your Honor, I'm Tom Orlando. I represent three of the Appley's, the Riverside Health Fitness, and the Grand Barrel Company, Riverside Medical, and PCS. We're a little confused, too. All right, gentlemen, as you know the rules, 15 minutes per side, which means the Appley's will share their time. Okay? Very well. You may proceed. Excuse me. May it please the Court, as I indicated, my name is John Wienold. I represent the plaintiff, Mr. Redman, in this case. As the Court has acknowledged during the introduction phase, the corporate structure here and the structure of the parties is somewhat confusing at best. I think it should be understood and remembered that Nyssa Redman didn't cause any of this confusion or whatnot. She was simply, at the time of this occurrence, doing the job of performing the duties that she was compelled to perform at a location where she was compelled to perform them at the Riverside Medical Center. This case comes before the Court on our appeal from the granting of summary judgments to basically all of the defendants that are here. They have divided up into two different groups. But basically, I think what the record has shown, what our brief has shown, is that these corporate defendants were so intermingled by their own choosing, it was very difficult to establish or to determine while people were there working or thereafter, where certain responsibilities lied and where they left off. It doesn't appear you've figured it out yet. I'm sorry? I said it doesn't appear you've figured it out yet, because I don't know why this case is here. Why it's in the appellate court? Correct. I see no issue of material fact at all. Well, Your Honor, with all respect to that, I'm not sure whether you're when you talk about an issue of material fact. I'm not even sure this event occurred from what I've seen in the briefs. One side says it does. One side says it doesn't. I don't know how you got the answer. I don't know how you got it. Your Honor, the allegations in the complaint and the discovery that has ensued prior to the motions for summary judgment clearly establish a question of fact. I mean, Nyssa Redmond is the person who does remember, and she does remember. Well, she could. I could remember anything I want. Well, Your Honor, again, with all respect to your argument against this point, that would seem to indicate, then, that in any circumstance where there is one plaintiff, one individual involved, and that was the only person who was a witness, that then that. . . Let's clarify one thing. Who do you contend that your client actually worked for? Who was her employer? It appears that she was employed by Riverside Health Fitness Center, but that was unclear because she was originally employed by a company called Lakeshore. Similarly . . . provide that RFC Management, LLC, took over the active management of the facility? The agreement says that. In actual practice, it did not. Who did she bring the comp claim against? She brought the comp claim against RHFC, and RHFC says that, yeah, Riverside, and RHFC answered the comp claim as the employer. Now, in fact, the person responsible for the safety of the operation, or two people responsible for the safety operation, were Casey Ashline, who was actually employed by Riverside, who ran the facility, and was responsible for the overall supervision. What happened to the board comp claim? It's still pending. And you say it's against RHFC? I believe that's the case, although they may have named Lakeshore Management as well. Is there more than one RHFC? Well, at the time of the employment, Lakeshore Medical was in the shoes of RHFC, at least in part, because they were the employees, the employers of the employees. Then they spun off the employment situation, or the hiring of employees, but retained the responsibility of providing supervision and safety and training to all the people that worked at the Riverside facility. That was through Colleen Wigg, who has admitted that she was the one responsible for safety. The addendum to the consulting agreement actually says that this supplants the original agreement between Oakside and Lakeshore Medical Fitness, LLC, and in the stead of Lakeshore Medical Fitness is RHFC Management, LLC, who takes over the management of the facility and the direction of all the employees at the health and fitness center. So isn't that the entity that is the employer at the time of the accident, if there was an accident? Well, RHFC is supposed to be the employer. RHFC Management, LLC, that's not the same entity. Your Honor, I think I understand what you're saying, and with all respect to what you're saying, in fact what happened was that the people that were not employed by RHFC, Casey Ashland and Colleen Wigg, were in fact responsible for providing safety. That was their admission. As I understand the record here, Casey Ashland was employed by RHFC. She was the only one who was. The rest of them were employed by the management, LLC, according to this addendum. Yeah. I mean, Casey Ashland was employed by a different entity than the RHFC limit. So where is the duty? Well, the duty is that Riverside, Casey Ashland working for Riverside, not the management facility, had a duty as the operator and owner of the property or agent for the owner of the property to maintain the property in a reasonably safe condition for the benefit of the planet. Why have you sued then all of these other entities if now you're telling us it's between RHFC and Ms. Ashland, who's their representative, and Ms. Redman? Well, Your Honor. Why is Lakeshore being sued? Why is Riverside Medical Center being sued? Why is the Riverside Health Fitness Center? All of these other entities that you've named here. What do they have to do with this? What kind of control have they exercised over the premises? Casey Ashland is employed by Riverside Medical. Casey Ashland is not employed by the same entity that employs Ms. Redman. That's clear from her deposition and clear from her admission. Colleen Wigg is employed by Lakeshore Medical. But there's no allegations that any of Riverside's personnel, Lakeshore or RHFC, There's no relationship or duties established here. You're not showing us clearly any direct connection or duty owed. Well, Your Honor. And you can't go into this bit about invitee of land. That's just not going to fly. So show us a duty somewhere. All right. Well, as the owner-occupier facility or which Riverside Medical is. The owners and occupiers, you're under premises liability there, are you not? Well, in part premises liability. But you didn't go on that theory in the trial court. You didn't go on premises liability. That came later on your appeal. You didn't even have that in the amended complaint. And you didn't have it in your answers or responses to any of the motions for summary judgment. So how do we have jurisdiction to entertain that theory up here? Well, Your Honor, I believe that there were two sets of allegations within the complaint, one of which would suggest that the owner-occupier, which I believe said Riverside was, had a duty to provide a safe place for the. What did they do that was unsafe? Well. Had some people unloading some chairs and a co-worker, according to you or your client, stacked some chairs up against a table and they were leaning against the table and inexplicably they fell over backwards and hit your client. Now, what did the corporations here do that was negligent? Well, they failed to provide any safety training or any safe operation to avoid that from happening, particularly in a situation where through no fault of the plaintiff, the thing was double-booked, she was being compelled to try to do her job, other people's jobs as well, and there wasn't any overall safety structure to say that, yes, when we operate these banquet facilities for a profit, that we will do so in a safe manner. She was compelled to be there. She had no choice. She had to take whatever situation was there for her in order to do her job. The fact that there was an unsafe situation that was created by a lack of policy or a policy of Riverside and the lakeshore management, which was operated by Colleen Wigg and was supposed to train these folks, she's there in a situation where she's lawfully on the premises and her circumstance is such that she has to do whatever she's doing. She doesn't have a choice to not do it or do it. How long did this unsafe condition exist? Well, quite frankly, Your Honor, it's variable depending on who makes the statement, but it doesn't matter under the case law because it's the defendants who created the unsafe condition. That's not under Jacobs and that's not under Eisenberg. That's just the opposite of what you're saying, counsel. Your Honor, under Eisenberg, that was a situation where you have a criminal event occurring and it was determined. I know what occurred. I'm saying the case law does not support your arguments. Well, I believe the reason. In other words, your theory is that there is no situation in which there shouldn't be a plan established. So, in other words, any accident should have had a plan, and that is not reasonably foreseeable. So, therefore, you're not even considering the four factors. Your Honor, with all respect, that's simply not true. We are considering the four factors. This is not considered reasonably foreseeable under the case law. Well, under the case law, particularly under the Marshall v. Burger King case, it certainly is. That's extreme. That's what our Supreme Court has said. These chairs that were stacked, were there, what, a matter of minutes, a couple of minutes, before they fell over backwards? Within minutes, depending on the time frame. I'm not suggesting that they were there for hours by any means, but that's not the test. Well, they were just unloaded, weren't they, off of a rolling cart of some type? And they were unloaded improperly, Your Honor, just because something sits there in a benign fashion for a long period of time or a short period of time. If the defendant created the condition, which the defendant in this case did, then the time frame of the notice doesn't apply under the Reed case. Didn't this young lady also change the factual scenario of how the event occurred from when she initially filed the complaint to her amended complaint? So we don't know what actually occurred there. Your Honor, based upon the testimony that has been set forth in the depositions, there's certainly – There's one deposition. Hers. Hers. Well, Your Honor – I'll still come back to this. There are no facts to support a duty associated with Redmond's work. Your Honor – Tell me what it is and where it is. You've yet to tell us. Under the Supreme Court decisions – No, I'm saying show us the duty in this case. Track it through. With all respect, Your Honor, I'm trying to do that. The duty exists in the situation of the defendants creating a situation where the plaintiff is compelled to be in a circumstance where, as a matter of policy, there has been an unsafe condition created. Where is the control? Where is Riverside's control over the event? Casey Ashline has direct control over the employees. You've got to get more – you've got to be more specific than that. That's not going to fly. Well, Your Honor, she was the one who admitted that she had the overall responsibility for safety training. Colleen Wigg is the person who admitted she had the overall responsibility for safety training. If that's your contention, then, are we narrowing down your thrust of liability to Ms. Ashline, who works for RHFC? So that's the entity we should be looking at for corporate liability here? Well, no, Your Honor. With all respect, Ms. Ashline works for Riverside Medical. She does not work for RHFC. She works for Riverside Medical, and the record's clear on that. Colleen Wigg works for Lakeshore Medical Protective, does not work for RHFC. She admitted that she is the person responsible for corporate training. But there is no relationship between Riverside and Lakeshore. Well, certainly there is, Your Honor, because if Lakeshore cuts costs, it makes more money. If Lakeshore comes and says, look, we want a safety program and we need to pay for it, then they don't make money and they don't get paid. That's why there's incentive right in the agreement for them to cut costs and to not have a safety program. I mean, we've got the facts as established either through the affidavits of depositions or the affidavit of Mr. Escobedo to indicate that this is the policy. His goes only to, what does his go to? Well, somebody else can ask the question until I find my note, because his does not establish a duty. His only establishes something after a duty's been established. So his actual affidavit is irrelevant. Well, perhaps that's your interpretation, Your Honor. I believe that his affidavit not only establishes based upon his review of the factual matters in the deposition, but also his understanding of the industry policy and practice, which is a factor. Let me go back to something you just said when I asked you who she worked for, Ms. Ashline. You said she does not work for RHFC. She works for Riverside Medical Center. That's correct. Well, isn't the correct entity Riverside Medical Center, DBA, Riverside Health and Fitness Center, they refer to as RHFC? Isn't that the correct reference point? No. Your Honor, again, with all respect, she works for a different entity than the entity. I think you're talking about the entity to that contract, that addendum to the contract. She works for a different entity than that. She works for Riverside, not RHFC, which was set up by Lakeshore. I mean, I admit it's confusing, but that's the fact. She does not work for them. She's the one person that everybody agrees does not work for the same entity that Ms. Redman does. No, she does not, because Ms. Redman works for RHFC Management LLC, which was created to manage the facility. And we went over that earlier. I showed you the addendum, and you agreed that that was the addendum that was in force at the time of this event. We agree it's a different entity than Ms. Ashwine is employed by. Correct. And Ms. Ashwine exercised control over the entire operation, and she said that she was the one overall responsible for making sure that there was a safe contract. So she is the one we look to for the management and the supervision? Is that what you're saying? What I'm saying, and I believe I said it before, is that it's not only she, but Colleen Wigg, who was not an employee of RHFC Limited, she was an employee of Lakeshore Medical. And she was the one that came down to train these people, except she admits that there was no training. You say she's an employee of Lakeshore Medical. You just said before it was Riverside Medical Center. No, that was Casey Ashwine. Colleen Wigg is employed, and her deposition was taken, and she has admitted with nothing contrary that she was an employee of the Lakeshore defendant, who was to come down, and they were making money off of streamlining the operation so there wasn't any safety. She was the one that admittedly, by her own admission, was responsible for safety training and making sure that the operation was safe. The facts show that there was no safety training. There wasn't anybody that was trained in the safe operation of the bank facility. And the only conclusion, or at least the conclusion from our side, from the affidavits and the deposition, is that there being no one who was responsible along those lines, Casey Ashwine not having any training, Colleen Wigg not having any training, Stacy Susi not having any training, and Nate Baumann not having any training, there was nobody responsible for making sure that this was a safe operation. That is, and that is a matter of the duty. The Supreme Court has said that the policy is, public policy is used to establish duty. And if there's a public, if there's a policy. Let's go back to a comment, a question that Justice Smith had touched upon, and that was notice. You have a situation here where these chairs were stacked, as you say, negligently for just a short period of time. A matter of a couple of minutes, according to the record. What kind of notice was that to the corporate entities here that there was an unsafe condition? Well, Your Honor, the fact that the corporate entities, through their employees or through their representatives, created the condition, the Reid case and the other case, actually Marshall and another case, which escapes me, indicate that there is no need for notice under those circumstances because it's the defendant itself that created the condition. It's not a third party that created the condition, and all of a sudden the defendant happened upon it. It was the defendant who created the condition because of the fact that there was no, there was absolutely no safety policy, there was no supervision. How do you reconcile that against the Russell case where there was a dangerous spill, I believe, and 10 minutes was not deemed to be a sufficient time for notice to the owner? Well, in Russell, it wasn't the owner that caused the problem. In Russell, it was somebody else that caused the problem. Somebody else came in. I mean, that's the distinction between the notice cases and where the defendant has control. If the defendant has control, it doesn't matter whether the dangerous condition exists for a short period of time or a long period of time. If the defendant has control, that's sufficient. But that wasn't your argument in the trial court. Well, with all respect, Your Honor, in the trial court, the argument for the, the argument on behalf of the defendants was simply that our client was not believable. That was, that was the thrust of that argument. And I don't believe at a summary judgment stage. But I'm still saying, you didn't argue that at the trial level. I believe, well, I believe through, I believe through the Marshall, I believe through the Lefebvre case we argued at the trial level, Your Honor. If I'm not mistaken. I don't see where Lefebvre helped you. Well. Because it's not reasonably foreseeable. So open and obvious sinks. And so does deliberate encounter. They both sink because you're not reasonably foreseeable. Well, if. And I go back to my argument that do I take the premise that no event should not have a policy in place. And no matter how unforeseeable it is, you're arguing there must be a policy in place. That would make it impossible for businesses to run their business. Therefore, you have to have established that there was something reasonably foreseeable about this event. Number one. And number two, you have to have established that this event occurred. I find that you have done neither. Well, Your Honor. I mean, how do we know she was injured there? She's testified under oath that she has and that she was. And there's testimony that she left a message on the machine for Casey Ashline. Casey Ashline had indicated that she received a message on her machine. There's medical records that show that immediately following she goes and gives the history that she was injured while at work when a stack of chairs fell on her. I mean, I don't know what she has to do other than huddle a whole bunch of people around her if she gets injured as a result of a negligently induced condition. I don't see that this is negligence at all. Well, Your Honor, you know, I don't know how you grew up and I don't know how anyone else grew up, but if you take a look at the way the chairs were originally supposed to be stacked and stored, they're on a rack and it keeps them in place. If chairs are stacked to the, and maybe you haven't seen it, I sure have, is if there are chairs that are stacked and more than just a few leaning up against something like a table, they're likely to slip down and fall. I don't know whether you've ever heard it, but I sure have. There's been a lot of clatter with something like that. Now, you say that the exceptions to the open and obvious don't apply. I respectfully disagree. She was not there of her own choosing. She was there because she had to be there. She had to set up the facility. She had to encounter the situation. How do you reconcile that with the Moore v. Kickapoo case cited by the appellees where the court held that a stack of chairs are not in themselves dangerous? Very simply, Your Honor. In Moore v. Kickapoo, there was a person who went around in back of an area where she had no business being. She was not compelled to be there. She was the one who actually walked into or hit a chair. It wasn't a dangerous condition where the chairs fell on her. It was a situation. It could have been a chair. It could have been anything. She was in a place where she had no reason to be, and it would be no different than me walking into this table as I'm heading back to sit down, seemingly with my head between my legs. But it would be no different than that. Sure, I can see it. It's open and obvious. I could have avoided it, and I wasn't in a situation where I had to encounter that table. In this situation, or in the Moore situation, it was nothing more than a lady walking into a chair that was there. It could have been any object, and she was not in a place where she was supposed to be, and it was not a place where she was compelled to be. So the direct encounter argument would not apply, nor would the other exception to the open and obvious rule. I had meant to withhold a couple minutes. Obviously, I'm way over the 15 minutes. If you want a short time for rebuttal, you better sit down now. Okay. Thank you. May I please support? You may. Counsel. My name is David Sullivan, and as I introduced myself in the beginning, I represent three of the appellees in this matter. Oakside Corporation, the owner of the facility, Lakeshore Medical Fitness, the management company who initially entered into the contract with Oakside, as you pointed out, and then Lakeshore Management Group, which is the grandparent of Plaintiff's Employer. For the record, to make clear again, Plaintiff's Employer is RHFC Management, LLC, and it is not a party to this appeal. And Plaintiff has brought a workers' compensation claim against RHFC Management, LLC. Can you clarify one thing for us? Are there two RHFCs? We seem to get that reading the briefs and the supporting material. I know there's some DBAs that are RHFC, but maybe you can address that for me. Certainly. There is a legal entity that was created under the Illinois law, a limited liability company known as RHFC Management, LLC. Right. I understand that one. The briefs and sometimes the parties make reference in shorthand form to RHFC. That reference is to Riverside Health Fitness Center, which is the DBA for the health club here where the accident took place. It is not a legal entity, anything that's just RHFC without management, LLC. It's Riverside Medical Center, DBA, Riverside Health and Fitness Center. Is that right? Correct. Riverside Medical Center is the parent of several different entities, including Oakside Corporation, who happens to own all of the assets in this case. Is it Riverside Health Systems is the parent? No. No, Riverside Health Systems is yet another entity on the Riverside side that does not have really anything to do with any of the operations, management or operation of the health club. Doesn't Riverside Medical Center, DBA, RHFC, isn't that owned by Riverside Health Systems along with Oakside? Aren't both those entities owned by the grandparent, Riverside Health System, which is DBA, Riverside Health Center? The DBA of Riverside Health Fitness Center is for Oakside Corporation, the entity that owns the health club here in this case. Okay. Riverside Medical Center owns Oakside and also several other entities including a hospital and I believe a senior living facility. So Riverside Medical Center is the parent corporation for three different entities, including Oakside, and it is Oakside that is doing the business as Riverside Health Fitness Center, which is sometimes abbreviated amongst us all for shorthand purposes and briefs as RHFC, but really RHFC should be limited to RHFC Management LLC, the employer, in this case of everybody involved in the operations of the club. Ms. Ashline does not work for the management company? With the exception of Casey Ashline, who was employed by Riverside Medical Center and she was the executive director of the health club. Okay. Now he's arguing, is it Lakeshore Medical, the young lady working for that, or maybe I have the wrong company, is accountable and responsible for the supervision in creating a program for safety? Well, counsel is arguing that everybody that he has named is a plaintiff. No, but he names more specifically one. He is arguing that Casey Ashline, through her work, through her employer, Riverside Medical Center, does have responsibility for maintaining safety at the health club. That is what his argument is here today. And the response I would have to that is that in this instance, we're not just talking about safety generally. Mr. Escobedo in his affidavit talks generally about banquet operations. What we're talking about here is a task that all of us have performed in our lives, school children perform, the setting out of folding chairs. is not something that the law requires that there be a special safety program in place for to train employees. Because at what point do we draw the line? Do we train people to not run with scissors, to avoid simple and common sense things that could harm them? The folding chairs in this case were set out against the side of the table. As plaintiff herself testified in her deposition, they were only there for a couple of minutes. And then they suddenly and inexplicably flipped backwards and landed on her foot. Now, whether or not there is an overall safety program for the operations of banquets really doesn't apply here. Because what we're talking about are just simply chairs. And this could have been a meeting at a ñ it didn't have to do anything with a banquet in particular. She could have been setting up these chairs for an employee meeting in the room or for any other circumstances. And, therefore, the notion that there should be some sort of safety program here should be rejected. What about the cases he cites? Well, Your Honor, we would say that most of them are ñ his emphasis is misplaced. Especially Marshall v. Burger King, we believe that that is a misinterpretation, misapplication of that case to the facts here. Here we are not dealing with the circumstances. It's more akin to Hills v. the Bridgeview Little League organization, where the room that was involved here was not open to the public at the time, as we have with the Burger King case where the car comes into the restaurant, which was at the time open to the public, and that the person who was killed was a member of the public who was there in the course of the business. Ms. Redman was in a room that was not accessible to the public at the time. She was there not as a customer. She was there in the course of her employment, and she was setting out the chairs for that purpose. And so we would argue that Marshall v. Burger King has been misapplied by the plaintiff here because you can't just simply say that there is some sort of duty relationship by virtue of the property owner business invitee title. Well, didn't you take the position that that entire theory of premises liability had been forfeited? We do, Your Honor, absolutely. That would include Hills as well as Burger King? Hills is in response to the plaintiff's citation to Burger King, and the argument that we made in our brief, and as you point out, the plaintiff never pled it, never raised it in response to motions for summary judgment, and she never asked for any opportunity to amend her complaint to add that in after losing on summary judgment. So as this Court has pointed out in Wilson v. Gorski's food, the argument has been waived and cannot be brought up for purposes of this appeal. Is it a question of waiver or forfeiture, or is it a lack of jurisdiction? We would argue that the Court has jurisdiction. Well, I believe that the Court has jurisdiction over this case. I believe that the plaintiff has waived the argument as a basis for reversing the trial court's grant of summary judgment. The notion that we have to have training for this particular task flies in the face of common sense. The courts have held that if the claim is based on a lack of training of a co-employee, then the plaintiff must show that the employer must have had some sort of notice and must have reason to know that the employee needed some sort of special training. And again, I come back to the nature of the accident here. To the extent that it occurred at all, it involved folding chairs that flipped backwards and landed on her foot. Common sense dictates that this is not something that we want to require employers to have a comprehensive safety program for. And to the extent that the plaintiff's complaint is based on the unreasonably dangerous condition of the chairs that were sitting there for only a couple of minutes, Justice House, as you pointed out, Moore v. Kickapoo, we think, from the Fourth District, definitively says that a stack of folding chairs in place, tipped up against the side of a wall, does not create an unreasonably dangerous condition. Plaintiff, in trying to establish a duty, relies primarily on Marshall and tries to avoid the four factors analysis that this court must engage in in order to determine whether a duty exists in this case. And those four factors, of course, are the reasonable foreseeability of the injury, the reasonable likelihood that an injury may occur, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. As I've already argued, this accident here was not reasonably foreseeable, and plaintiff has presented no evidence that her injury was reasonably likely from these circumstances. As for the magnitude of the burden of guarding against the injury, at what point do we draw the line? At what point do we require an employer to have a safety program that covers every single minute aspect of a plaintiff's job? Finally, the consequences of the burden, if they are placed upon the defendants in this case, it runs counter to the court's instruction with Fever v. Chemlight, which rejected the notion that a property owner is the absolute insurer of everyone's safety who comes onto the premises. And that's what would essentially be happening here if the court created a duty under these circumstances. I see that I'm almost near the end of my time, and I would like to reserve three minutes for my co-appellee if there are no further questions. Thank you. Very well. Good morning. Morning. May it please the Court. My name is Tom Orlando. I represent three of the athletes, and this time I'll get the names right. The first is Riverside Health System. The second is Riverside Medical Center. And the third is Casey Ashline. I think some of the confusion having to do with the parties and the DBAs is created by how the complaint is captioned with these various DBAs. But as the record developed and discovery proceeded, a lot of those DBAs were determined as an undisputed matter that the DBAs did not exist the way they are set forth in the complaint. My client, Riverside Health System, is the grandparent of the fitness center, in which, as counsel has pointed out, Riverside Health and Fitness Center is not a legal entity. It's the facility. It's a DBA. But it's a DBA of the Oakside Corporation. And, again, my client, Riverside Health System, owns Oakside. In addition, my client, Riverside Health System, is the parent company of Riverside Medical Center. Riverside Medical Center has no connection to Riverside Health and Fitness Center. That is not the DBA relationship. Let's go back there. You say Riverside Medical Center. Isn't it Riverside Medical Center, DBA, Riverside Health and Fitness Center? That's how it's styled in the complaint, but that doesn't exist that way. All right. Okay. However, Riverside Medical Center is the employer of Casey Ashline. Okay. And Casey Ashline is the executive director of the center. I think that I wrote down something that plaintiff's counsel said a number of times. It was the defendant that created the condition. Well, we have 11 defendants here, so that sort of begs the question, which of the 11 are being referred to? With respect to my three clients, Riverside Health System, the grandparent, Riverside Medical Center, and Casey Ashline, none of them created this condition or were in any position to control the condition, and ultimately that goes to the reasonable foreseeability and the duty issues. My clients, none of them hired Ms. Redman or employed her. My clients, none of them contracted with any of the other parties that hired Ms. Redman or employed her. My clients did not own any of the parties that hired Ms. Redman or employed her. None of my clients are business invite doors with respect to the center. My clients are in no position to direct or control the unloading of metal chairs or to hire those that were responsible for unloading metal chairs. My clients have no connection to the work that was being performed and could not foresee the alleged injury. None of my clients have actual or constructive knowledge that a person could be injured in this way. Under any of the legal theories that have been put forth in this case, any legal theory recognized under Illinois law, there is no duty owed by my clients to Ms. Redman under the undisputed facts of this case, and we would ask that the court affirm the trial court's decision. To clarify one thing, counsel, you represent Lakeshore? I do not. You do not. Okay. All right. That's fine. Thank you. Mr. Court, with respect to one of your questions of Mr. Sullivan, I think you were searching for the name Colleen Wigg. It was not only my contention that Casey Ashline was the one who was in overall control. I think that Mr. Orlando has just cleared up what I was trying to explain earlier, is that Riverside Medical Center, not RHFC, Riverside Medical Center, was the one who employed Casey Ashline. She was the one who was responsible for and controlled all of the employees that were working there, including RHFC Limited and any Lakeshore medical employees that would have been there. Colleen Wigg is the person who undeniably was employed by Lakeshore Medical Fitness, one of the defendants here, and she is the one who undeniably has said that she was responsible for establishing safety and a safety program. As counsel just pointed out, I think some of the problems come with the way these captions have been ended up on the briefs and on some of the pleadings here because on your opening brief, your first defendant is Riverside Medical Center and individually in BBA, Riverside Health Fitness Center, and that's not the case. That's not the case. Well, I guess I can apologize for that, Your Honor. When the original case was filed and when this chart was set forth, nobody knew, quite frankly, and I challenged the defendants to really know what the corporate structure of this was. We didn't know what the corporate structure of this was, and I'm still not sure we do know, but what the corporate structure of this was until such time as depositions were taken. Well, did you file a reply brief in the case? Your Honor, again, with respect, I had made a motion for Lief to file a reply brief for an extension. I had agreement of all counsel, and it was denied. So I didn't file a reply brief because I was denied. The reason I say that is the analysis in the appellee's briefs and two of them, I think, serve to clarify a good deal of the problems we've been having as to who the proper entities are here. That's been clarified somewhat today as well. And it would be my suggestion to the Court that based upon those things that I think I said and the questions you asked of them, we now have a situation where Casey Ashline, one of the defendants and also the representative and clearly employed by Riverside Medical Center, was the person who had direct supervisory control over not only my client, Mr. Redman, but all other people that were working for the health club. That's undeniable. She is not a co-employee. She is a person that exercised responsibility. She could hire and fire. Colleen Wigg, who is undeniably employed by Lakeshore Medical Fitness, one of the defendants has indicated or testified that she is the person who is directly responsible for maintaining the safety program and maintaining the safety of the premises. Those are different entities, but they both had control over my client and the other people that were working there. They're the ones who had the control who could have established a situation where there was a safe banquet facility. I believe that the characterization that where do we draw the line, you know, and related to children running around or saying these are things that a child would know how to do, well, there are a lot of things that a child on a construction site, for instance, that a child would know how to do or that anybody should know how to do, but it needs a safety program and somebody making sure that it's done in an orderly fashion so that in a situation where there is a pressured situation, there are only two people and not six or eight like there should have been, and one of them, Nyssa, being forced to do things that she otherwise wasn't supposed to do, under those circumstances, yes, there is a duty. Yes, it is foreseeable. And one of the things I would like to clarify, and I believe that at least based on my reading of the Supreme Court cases on policy and duty and foreseeability is that there does not have to be the foreseeability that this particular injury occurred in this particular way. In fact, the Supreme Court has gone against that thinking and saying that there has to be an overall duty to provide a safe place so that these things don't happen. There is foreseeability that if there's not a safety program, if there are inadequate staffing to do something in a shorter period of time than there's time enough to do, yes, it is foreseeable that something is going to happen, whether it be the chairs going over, whether it be a table being improperly set up, whether it be some other condition which the plaintiff is compelled to undertake. If there was such a duty, wouldn't that devolve upon RHFC management, LLC, who was given the responsibility to actively manage and supervise the employees here? With all respect, And you didn't sue them, did you? I'm sorry? You did not sue that entity? RHFC. RHFC. RHFC Management, LLC. The actual employer of your client. Well, I mean, I don't believe we can sue the employer of our client, can we? You had your work out. Yeah. But that's, so I guess what I'm suggesting, Your Honor, is that it is not RHFC Limited, LLC that is the entity that is actually controlling. It is Riverside Medical through Casey Ashline. It is Lakeshore Medical through Colleen Wigg. These are the people that come and control the people. That's because you can't sue the management company, so you've named everybody else. Your Honor, there is no one in the management company that exhibited control over the situation. There is no one that had overall control of the situation other than Riverside Medical through Casey Ashline or Lakeshore Medical through Colleen Wigg. The other people were simply doing what they were told to do. And it's not my client's fault that she was hired by Casey Ashline, who was Riverside Medical Center, but she was paid by RHFC Limited, LLC. That's not her fault. And one final thing, and I understand that the Supreme Court has wrestled with the issue of duty, but they have also made it pretty clear what they feel about a no-duty rule. And if there is a no-duty rule for each individual circumstance, that becomes unworkable. And that's why, and I understand, Your Honor, Justice Smith, Fitzgerald Smith, does not like the Marshall case, but it nevertheless is a law from the Supreme Court of the State of Illinois. It has not been overturned and has set forth what the policy is in this state. And with all respect, we're bound to follow it. But it speaks that rules declaring that no duty exists can easily be made. Well, the Marshall case might have some significance had it been pleaded in the trial court below. Had you relied upon that theory in the proceedings before the trial judge? Well, with all respect, Your Honor, the Marshall case speaks to a broader thing, a broader area than simply it does go to the four aspects of duty. And it does talk about foreseeability of some occurrence. It does talk about the foreseeability of an injury, not the specific injury. It does go to the concept of what is the, what is, what would be the cost for something to avoid the injury, and the last, the magnitude of the burden of guarding against the injury and the consequences of placing the burden on the defendant. The magnitude of the burden of guarding against the injury simply adding, or enforcing, adding a safety program, certainly that's not a burden to anybody, because any corporate entity should have a safety program. Certainly the consequences of placing the burden on the defendant of a safety program, certainly that isn't a large consequence. Certainly adding someone who knows what they're doing is not a huge cost, nor is it a burden, and it could provide safety to all those working. Thank you.